JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Vincent P. Pultorak

**DEFENDANTS**

Johnson & Johnson Services, Inc. and Johnson and Johnson

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Middlesex
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Laura C. Mattiacci, Esq., Console Mattiacci Law, LLC, 110 Marter Ave., Suite 502, Moorestown, NJ 08057; 856-854-4000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☑ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 621, et seq. ("ADEA"), 42 U.S.C. § 12101, et seq. ("ADA"), N.J.S.A. § 10:5-1, et seq. ("NJLAD")

Brief description of cause:
Plaintiff brings this action against Defendants for age and disability discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
In excess of $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
2/5/2021

SIGNATURE OF ATTORNEY OF RECORD
*/s/ Laura C. Mattiacci*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **VINCENT P. PULTORAK** | : | |
| **Schwenksville, PA 19473** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHNSON & JOHNSON SERVICES, INC.** | : | |
| **One Johnson & Johnson Plaza** | : | |
| **New Brunswick, NJ 08933** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JOHNSON & JOHNSON** | : | |
| **One Johnson & Johnson Plaza** | : | |
| **New Brunswick, NJ 08933** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Defendants.** | : | |
| | : | |

## COMPLAINT

### I.    INTRODUCTION

Plaintiff was terminated by Defendants after taking medical leaves for Stage IV throat and lung cancer and lumbar spinal fusion therapy. When Plaintiff returned from medical leave in July 2019, his supervisor advised him that he had the choice of taking a new role that would combine his job with that of his subordinate, Natalie Gosciminski (which would eliminate her job), or retiring. The following week, Plaintiff advised his supervisor that he would accept the new role, to which she appeared visibly surprised. Three weeks later, Defendants told Plaintiff that he would be terminated. Plaintiff was 56 years old, had over 8 years of stellar service, and was a Senior Director. The new role was given to Ms. Gosciminski – a substantially younger, less qualified, and non-disabled individual, with about one year of relevant experience. Plaintiff then applied for

several other positions at Defendants for which he was qualified, but was rejected. The termination has had a devastating impact on Plaintiff and his family, financially and emotionally. Plaintiff now brings claims pursuant to the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, et seq. ("ADEA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, et seq. ("NJLAD"). Plaintiff seeks injunctive and declarative relief, damages, including economic, compensatory, liquidated, and punitive damages, and all other relief under the ADA, ADEA, NJLAD, and as this Court deems appropriate.

## II.   PARTIES

1.     Plaintiff, Vincent P. Pultorak, is an individual and a citizen of the Commonwealth of Pennsylvania.  He resides in Schwenksville, Pennsylvania.

2.     Plaintiff was born in July 1963, and was age fifty-six (56) when Defendants terminated his employment.

3.     At all times material hereto, Plaintiff was a qualified individual with a disability within the meaning of the laws at issue, in that he suffered from a mental and/or physical impairment which substantially limited one or more major life activities, had a record of such impairment, and/or was regarded or perceived by Defendants as having such impairment.

4.     Defendant, Johnson & Johnson, is a New Jersey corporation headquartered at One Johnson & Johnson Plaza, New Brunswick, NJ 08933. Johnson & Johnson is the parent company of several wholly-owned and controlled subsidiary corporations, including Defendant Johnson & Johnson Services, Inc.

5.     Defendant, Johnson & Johnson Services, Inc., is a New Jersey corporation headquartered at One Johnson & Johnson Plaza, New Brunswick, NJ 08933. Johnson & Johnson

Services, Inc. is a wholly owned subsidiary of Defendant Johnson & Johnson and they act as joint employers.

6.      Defendants are engaged in an industry affecting interstate commerce and regularly do business in the state of New Jersey.

7.      At all times material hereto, Plaintiff worked out of Defendants' office at 1003 US Highway 202, Raritan, NJ, 08869.

8.      At all times material hereto, Defendants employed twenty (20) or more employees.

9.      At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

10.     At all times material hereto, Defendants were employers within the meaning of the ADEA, ADA, and NJLAD.

11.     At all times material hereto, Plaintiff was an employee of Defendants within the meanings of the ADEA, ADA, and NJLAD.

## III.   JURISDICTION AND VENUE

12.     The causes of action that form the basis of this matter arise under the ADEA, ADA, and NJLAD.

13.     The District Court has jurisdiction over Count I (ADEA) and Count II (ADA) pursuant to 28 U.S.C. §1331.

14.     The District Court has jurisdiction over Count III (NJLAD) pursuant to 28 U.S.C. §1367.

15.     The District Court has jurisdiction over Counts I, II, and III, pursuant to U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars

($75,000), exclusive of interests and costs, and as there is complete diversity of citizenship as Plaintiff is a citizen of Pennsylvania and the Defendants are citizens of New Jersey.

16.     Venue is proper in the District Court pursuant to 28 U.S.C. §1391(b).

17.     On or about March 4, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto and incorporated herein and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

18.     On or about November 9, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue.  Attached hereto, and marked as Exhibit "B" is a true and correct copy of that Notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

19.     Plaintiff is filing this complaint within ninety (90) days of his receipt of this Notice.

20.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

**IV.     FACTUAL ALLEGATIONS**

21.     Plaintiff was hired by Defendants on or about February 28, 2011.

22.     Plaintiff is an experienced IT professional, with over twenty (20) years of industry experience, including global leadership positions in multinational corporations.

23.     Plaintiff successfully held a number of global leadership roles with Defendants: Senior Director, IT Strategic Sourcing; Senior Director, Enterprise IT Sourcing & Supplier Management; and Senior Director, Procurement, IT Software Category and Regional Teams.

24.     Plaintiff consistently performed his job duties in an excellent manner.

25.     Plaintiff had no disciplinary issues throughout his employment.

26.   Plaintiff's outstanding performance was recognized by J&J, including, without limitation:

   a.   Plaintiff received the Standards of Leadership Award (the highest form of recognition of successful performance at J&J) twice, as well as multiple Encore Awards;

   b.   Plaintiff was selected by J&J as an IT Category expert to provide a presentation to the US Government Office of Federal Procurement Policy at the White House;

   c.   Plaintiff's performance evaluations have been positive throughout the years, including performance ratings of "Exceeds Expectations;"

   d.   Plaintiff received bonuses, merit increases, and long-term incentive grants.

27.   In or about January 2016, Plaintiff was selected for the Senior Director, Procurement, IT Software Category and Regional Teams role against a pool of internal and external candidates.

28.   Plaintiff was qualified for the position of Senior Director, Procurement, IT Software Category and Regional Teams.

29.   On or about May 15, 2016, Plaintiff began reporting to Sally Macaluso ("Macaluso") (approximate age 49, non-disabled), Chief Procurement Officer and Vice President of Business Services. Macaluso reported to Leonard Decandia (approximate age 62, non-disabled), Chief Procurement Officer.

30.   In addition to Plaintiff, Angela Shenton ("Shenton") (approximate age 42, non-disabled), Senior Director of IT Procurement, reported to Macaluso in the IT Procurement team. Plaintiff was more qualified to perform Shenton's position.

5

31.     On or about October 31, 2016, Plaintiff was diagnosed with Stage IV throat and tongue cancers.

32.     On or about October 31, 2016, Plaintiff informed Macaluso that he was diagnosed with Stage IV throat and tongue cancers and that he would require medical treatment and, as a result, a medical leave of absence.

33.     From on or about November 21, 2016, to on or about May 22, 2017, Plaintiff was out on an approved medical leave of absence under Defendants' Short-Term Disability Plan.

34.     Plaintiff underwent multiple surgeries, hospitalizations, chemotherapy, and radiation. He lost his abilities to swallow and speak, and required speech therapy for over a year.

35.     On or about May 22, 2017, Plaintiff returned to work from his medical leave of absence.

36.     Plaintiff requested and received the accommodation of working from home intermittently to continue treatment related to his disability.

37.     During this time, Plaintiff attended all key meetings in the office, and worked between one to three days per week on site in one of J&J's locations. Plaintiff continued to manage his regional teams virtually, as he did prior to his medical leave of absence.

38.     In or about October 2018, Defendants hired Natalie Gosciminski ("Gosciminski") (approximate age 44, non-disabled), to the role of Director, Global Categories Leader, IT Software, and she began reporting to Plaintiff.

39.     On or about April 3, 2019, Plaintiff learned that he would have to undergo a lumbar spinal fusion surgery.

40.     On or about April 5, 2019, Plaintiff informed Macaluso that he required a lumbar spinal fusion surgery, and requested medical leave of absence.

41.     From on or about May 6, 2019, to on or about July 15, 2019, Plaintiff was out of work on an approved medical leave of absence under Defendants' Short-Term Disability Plan.

42.     On or about July 15, 2019, upon Plaintiff's return to work from his medical leave of absence, Macaluso requested to meet with him on July 17, 2019.

43.     On or about July 17, 2019, in a meeting with Macaluso, she presented Plaintiff with two (2) options: accept a new, increased position, which would combine Plaintiff's position with Gosciminski's position, resulting in the elimination of Gosciminski's position; or, consider retiring.

44.     Macaluso recommended that Plaintiff contact Theresa Lopez (approximate age 44, non-disabled), Procurement Human Resources Leader, to learn more about the retirement option.

45.     Macaluso instructed Plaintiff to inform her of his decision within two (2) weeks.

46.     On or about July 26, 2019, in a meeting with Macaluso, Plaintiff informed her of his decision to accept the new, increased position, which would combine Plaintiff's position with Gosciminski's position. Plaintiff stated that he looked forward to remaining employed with Defendants and taking on the expanded role.

47.     Macaluso was visibly surprised in response to Plaintiff's decision to accept the new, increased role, and responded that she would have liked to see Gosciminski get the new, increased role.

48.     On or about August 18, 2019, in a meeting with Macaluso, she notified Plaintiff that Defendants would be terminating his employment, effective November 15, 2019, and that Plaintiff would receive documents to this effect on October 16, 2019.

49.     Macaluso told Plaintiff that the new position that he had accepted had been redefined and "re-leveled" to a Director (instead of a Senior Director) position, and now would

be smaller in scope.

50.     Macaluso stated that, with the downgrade of the new position, Defendants would be eliminating Plaintiff's position instead of eliminating Gosciminski's position, and Gosciminski would be given the new role instead of Plaintiff.

51.     Macaluso stated that Plaintiff could apply for an open, lower-level Director position to remain employed with Defendants and that no Senior Director positions would be available in the Procurement team.

52.     Defendants offered no explanation, including the selection criteria, as to why Plaintiff was being terminated and the less qualified, substantially younger, non-disabled employee, who did not seek accommodations for a disability, was being retained.

53.     Defendants assigned Plaintiff's job responsibilities to Gosciminski and Shenton, both younger, non-disabled employees, who have not sought reasonable accommodations for a disability.

54.     Plaintiff was more qualified and experienced to perform his job responsibilities than Gosciminski and Shenton. By way of example, and to the best of his knowledge:

        a.     Gosciminski had no previous IT Category Procurement experience when Plaintiff recruited her to his team in or about 2018, and Plaintiff had mentored and trained her in the Director, Global Categories Leader, IT Software position;

        b.     Plaintiff had over twenty (20) years of IT Category Procurement experience while Gosciminski had only about thirteen (13) months of same;

        c.     Shenton was initially hired into a Director level position in the IT Procurement team (from J&J's Finance function) and reported directly to Plaintiff, who had mentored and trained her in IT Category Procurement;

d.     Shenton had only about three (3) years of experience in IT Category Procurement compare to Plaintiff's over twenty (20) years of same experience, and about one (1) year in a Senior Director role compare to Plaintiff's over eight (8) years in same role with Defendants (and six (6) more years with another multinational corporation).

55.    Before the termination meeting, Plaintiff had no indication that his job was in jeopardy.

56.    Plaintiff was the only employee directly reporting to Macaluso who was notified of termination on or about August 18, 2019.

57.    On or about August 18, 2019, Plaintiff applied for the posted Director, External Alliances for Data Sciences position.

58.    Plaintiff was qualified for the Director, External Alliances for Data Sciences position.

59.    On or about August 30, 2019, Plaintiff applied for the posted Director, External Manufacturing and Supply Chain position.

60.    Plaintiff was qualified for the Director, External Manufacturing and Supply Chain position.

61.    Plaintiff was not interviewed for the Director, External Manufacturing and Supply Chain position.

62.    On or about October 15, 2019, Plaintiff interviewed with Robert Zambold (approximate age 45, non-disabled), Senior Director, Research and Development Data Science Strategy and External Alliances, for the Director, External Alliances for Data Sciences position.

63.    On or about October 30, 2019, Plaintiff interviewed with Joseph Lehar

(approximate age 60, non-disabled), Vice President, Janssen Research and Development, Data Science Analytics and Insights, for the Director, External Alliances for Data Sciences position.

64.     On or about November 13, 2019, Plaintiff interviewed with Xiaoying Wu (approximate age 42, non-disabled), Senior Director, Data Science Platforms, for the Director, External Alliances for Data Sciences position.

65.     In or about November 2019, Plaintiff requested that Defendants extend his effective termination date until after the completion of the interview process for the Director, External Alliances for Data Sciences position.

66.     On or about November 14, 2019, Plaintiff's effective termination date was extended to November 29, 2019.

67.     On or about November 28, 2019, Plaintiff's effective termination date was extended to December 13, 2019.

68.      On or about December 5, 2019, Plaintiff was interviewed with Najat Khan (approximate age 38, non-disabled), Chief Operating Officer, Janssen Research and Development Data Sciences, Global Head, Janssen Research and Development Strategy and Operations, for the Director, External Alliances for Data Sciences position.

69.     On or about December 11, 2019, in a meeting with Macaluso, she informed Plaintiff that Defendants failed to select him for the Director, External Alliances for Data Sciences position. Plaintiff was told that the position was being put on hold indefinitely and that Plaintiff would be terminated effective December 13, 2019.

70.     On December 13, 2019, Plaintiff's employment was terminated.

71.     At all times material hereto, Plaintiff was able to perform the essential functions of his job with or without a reasonable accommodation.

72.    Plaintiff was the only employee directly reporting to Macaluso on the IT Procurement team who was terminated on December 13, 2019.

73.    Plaintiff was the oldest employee on the IT Procurement team reporting to Macaluso.

74.    Upon information and belief, Plaintiff was the only disabled employee on the IT Procurement team reporting to Macaluso.

75.    According to the Older Workers Benefits Protection Act ("OWBPA") list provided to Plaintiff on October 16, 2019, Defendants retained all the younger employees in Plaintiff's position, Director 2, Procurement, when Plaintiff was terminated.

76.    According to the OWBPA list, Plaintiff was one (1) of the two (2) oldest Director 2, Procurement employees, age fifty-six (56), and was the only Director 2, Procurement employee terminated.

77.    Plaintiff's age was a motivating and/or determinative factor in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including without limitation in connection with: withdrawing Defendants' offer to Plaintiff of the new, increased position, eliminating Plaintiff's position, terminating Plaintiff's employment, failing to select Plaintiff, or interview him, for the Director, External Manufacturing and Supply Chain position, and failing to select Plaintiff for the Director, External Alliances for Data Sciences position.

78.    Plaintiff's disability, including his record of disability and Defendants' regarding him as having a disability, was a motivating and/or determinative factor in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including, without limitation, in connection with: withdrawing Defendants' offer to Plaintiff of the new, increased position, eliminating Plaintiff's position, terminating Plaintiff's employment, failing to select Plaintiff, or

interview him, for the Director, External Manufacturing and Supply Chain position, and failing to select Plaintiff for the Director, External Alliances for Data Sciences position.

79.     Plaintiff's requests for medical leave of absence and/or reasonable accommodations, were a motivating and/or determinative factor in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including without limitation in connection with: withdrawing Defendants' offer to Plaintiff of the new, increased position, eliminating Plaintiff's position, terminating Plaintiff's employment, failing to select Plaintiff, or interview him, for the Director, External Manufacturing and Supply Chain position, and failing to select Plaintiff for the Director, External Alliances for Data Sciences position.

80.     As a direct and proximate result of Defendants' discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I - ADA

81.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

82.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

83.     Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

84.     As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

85.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

86.     No previous application has been made for the relief requested herein.

## COUNT II – ADEA

87.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

88.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADEA.

89.     Defendants' violations of the ADEA were intentional and willful under the circumstances, warranting the imposition of liquidated damages.

90.     As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

91.     Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

92.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

93.     No previous application has been made for the relief requested herein.

## COUNT III – NJLAD

94.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint, as if fully set forth herein.

95.     By committing the foregoing acts of discrimination and retaliation against Plaintiff,

Defendants have violated the NJLAD.

96.     Defendants' violations of the NJLAD were intentional and willful under the circumstances, warranting the imposition of punitive damages.

97.     Members of Defendants' upper management had actual participation in, or willful indifference to, Defendants' wrongful conduct described herein, and their conduct warrants the imposition of punitive damages against Defendants.

98.     As a direct and proximate result of Defendants' violation of the NJLAD, Plaintiff has suffered the injuries, damages, and losses set forth herein.

99.     Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

100.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

101.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants:

(a)     declaring the acts and practices complained of herein to be in violation of the ADA;

(b)     declaring the acts and practices complained of herein to be a violation of the ADEA;

(c)     declaring the acts and practices complained of herein to be in violation of the NJLAD;

(d)     enjoining and restraining permanently the violations alleged herein;

14

(e)      entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(f)      awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory and unlawful misconduct;

(g)      awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(h)      awarding liquidated damages to Plaintiff;

(i)      awarding punitive damages to Plaintiff;

(j)      awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

(k)      awarding Plaintiff such other damages as are appropriate under the ADA, ADEA and the NJLAD; and

(l)      granting such other and further relief as this Court deems appropriate.


**CONSOLE MATTIACCI LAW, LLC**


Dated: February 5, 2021              BY:  _/s/ Laura C. Mattiacci_____
                                     Laura C. Mattiacci, Esquire
                                     110 Marter Avenue, Suite 105
                                     Moorestown, NJ 08057
                                     Telephone: (856) 854-4000
                                     Facsimile: (215) 565-2852
                                     mattiacci@consolelaw.com

                                     *Attorney for Plaintiff Vincent P. Pultorak*

# EXHIBIT A

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | AGENCY<br>Q   FEPA<br>X   EEOC | CHARGE NUMBER |
|---|---|---|---|
| STATE OR LOCAL AGENCY: | | | |

| NAME (Indicate **Mr.**, Ms., Mrs.)<br>**Vincent P. Pultorak** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>(215) 272-0647 | |
|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP<br>Schwenksville, PA 19473 | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Johnson & Johnson Services, Inc.;**<br>**Johnson & Johnson** | NUMBER OF EMPLOYEES, MEMBERS<br>> 20 | TELEPHONE (Include Area Code)<br>(732) 524-0400 |
|---|---|---|
| STREET ADDRESS<br>One Johnson & Johnson Plaza | CITY, STATE AND ZIP<br>New Brunswick, NJ 08933 | COUNTY<br>Middlesex |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race   Q Color   Q Sex   Q Religion   Q National Origin<br>**X** Retaliation   **X** Age   **X Disability**   Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*            *Latest*  12/13/2019 |
|---|---|

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondents on or about February 28, 2011.  I last held the position of Senior Director, Procurement, IT Software Category and Regional Teams.  I last reported to Sally Macaluso (49[a]), Chief Procurement Officer and Vice President of Business Services.  Macaluso reported to Leonard Decandia (62), Chief Procurement Officer.

Respondents terminated my employment and failed to select me for positions for which I was qualified and had applied because of my age and/or my disability and/or my seeking reasonable accommodations for my disability.  I was age fifty-six (56) with more than eight (8) years of service at Respondents, and Respondents were aware of my disability and my seeking reasonable accommodations for my disability, including medical leaves of absence.  When I was terminated, Respondents retained in positions for which I was more qualified substantially younger, nondisabled employees and/or employees who did not seek reasonable accommodations[b] for a disability.

I consistently demonstrated positive performance and dedication to Respondent.  I performed my duties in a highly competent manner and received positive feedback.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | |

| Date:            Charging Party (*Signature*):<br><br>3/3/2020   *[signature]* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|

---

[a] All ages herein are approximations.
[b] All references to an employee not having sought reasonable accommodations for a disability are to the best of my knowledge.

2.     Harm Summary

I have been discriminated against because of my age (56) and my disability (including history of and regarded as) and retaliated against because of my seeking reasonable accommodations for my disability.  Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following.

(a)  On or about May 15, 2016, I began reporting to Macaluso.

(b)  In addition to me, Angela Shenton (42), Senior Director of Information Technology Procurement, reported to Macaluso in the Information Technology Department.  I was more qualified to perform Shenton's position.

(c)  On or about October 31, 2016, I was diagnosed with Stage IV throat and tongue cancers and learned that I would require treatment and a medical leave of absence from work.

(d)  On or about October 31, 2016, I informed Macaluso that I was diagnosed with Stage IV throat and tongue cancers, required treatment, and needed to take a medical leave of absence.

(e)  From on or about November 21, 2016, to on or about May 22, 2017, I was out of work on a medical leave of absence for my disability.

(f)  On or about May 22, 2017, I returned from my medical leave of absence.

(g)  I requested and received the accommodation of working from home intermittently to continue treatment related to my disability.

(h)  In or about October 2018, Respondents hired Natalie Gosciminski (44), Director, Global Categories Leader, Information Technology Software, and she began reporting to me.

(i)  On or about April 3, 2019, I learned that I would have to undergo a lumbar spine fusion and take a medical leave of absence from work.

(j)  On or about April 5, 2019, I informed Macaluso that I required surgery and would have to undergo a lumbar spine fusion, and needed to take a medical leave of absence.

(k)  From on or about May 6, 2019, to on or about July 15, 2019, I was out of work on a medical leave of absence for my disability.

(l)  On July 15, 2019, upon my return to work from my medical leave of absence, Macaluso requested to meet with me on July 17, 2019.

(m)  On July 17, 2019, in a meeting with Macaluso, she presented me with two (2) options: accept a new, increased position, which would combine my position with Gosciminski's position, resulting in the elimination of Gosciminski's position; or, consider retiring.  Macaluso recommended that I contact Theresa Lopez (44), Procurement Human Resources Leader, to learn more about the retirement option.  Macaluso instructed me to inform her of my decision within two (2) weeks.

**EEOC Charge of Discrimination**
**Page 3 of 5**
**Initials of Charging Party –** $VP$

(n) On July 26, 2019, in a meeting with Macaluso, I informed her of my decision to accept the new, increased position, which would combine my current position with Gosciminski's position. I stated that I looked forward to remaining employed with Respondents and taking on the expanded role. Macaluso was visibly surprised, and responded that she would have liked to see Gosciminski get the new, expanded role.

(o) On August 18, 2019, in a meeting with Macaluso, she notified me that Respondents would be terminating my employment, effective November 15, 2019, and that I would receive documents to this effect on October 16, 2019. Macaluso told me that the new position that I had accepted had been redefined and "re-leveled" to a Director (instead of a Senior Director) position, and now would be smaller in scope. Macaluso stated that, with the downgrade of the new position, Respondents would be eliminating my position instead of eliminating Gosciminskii's position, and Gosciminski would be given the new role instead of me. Macaluso stated that I could apply for an open, lower-level Director position to remain employed with Respondents and that no Senior Director positions would be available in the Procurement Department.

(p) Respondents withdrew its offer to me of the new, increased position because of my age and/or my disability and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(q) Respondents notified me of termination because of my age and/or my disability and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(r) Respondents offered no explanation, including the selection criteria, as to why I was being terminated and the less qualified, substantially younger, nondisabled employee who did not seek accommodations for a disability were being retained.

(s) Before the termination meeting, I had no indication that my job was in jeopardy.

(t) I was the only employee directly reporting to Macaluso who was notified of termination on August 18, 2019.

(u) On or about August 18, 2019, I applied for the posted Director, External Alliances for Data Sciences position. I was qualified for the position.

(v) On or about August 30, 2019, I applied for the posted Director, External Manufacturing and Supply Chain position. I was qualified for the position. I was not interviewed for the position.

(w) Respondents failed to select me, or interview me, for the Director, External Manufacturing and Supply Chain position because of my age and/or my disability and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(x) On or about October 15, 2019, I interviewed with Robert Zambold (45), Senior Director, Research and Development Data Science Strategy and External Alliances, for the Director, External Alliances for Data Sciences position.

(y) On or about October 30, 2019, I interviewed with Joseph Lehar (60), Vice President, Janssen Research and Development, Data Science Analytics and Insights, for the Director, External Alliances for Data Sciences position.

**EEOC Charge of Discrimination**
**Page 4 of 5**
**Initials of Charging Party –** $\vee\rho$

(z)  On or about November 13, 2019, I interviewed with Xiaoying Wu (42), Senior Director, Data Science Platforms, for the Director, External Alliances for Data Sciences position.

(aa) On or about November 14, 2019, my effective termination date was extended to November 29, 2019.

(bb) On or about November 28, 2019, my effective termination date was extended to December 13, 2019.

(cc) On or about December 5, 2019, I interviewed with Najat Khan (38), Chief Operating Officer, Janssen Research and Development Data Sciences, Global Head, Janssen Research and Development Strategy and Operations, for the Director, External Alliances for Data Sciences position.

(dd) On or about December 11, 2019, in a meeting with Macaluso, I was informed that Respondents failed to select me for the Director, External Alliances for Data Sciences position. I was told that the position was being put on hold indefinitely and that I would be terminated effective December 13, 2019.

(ee) Respondents failed to select me for the Director, External Alliances for Data Sciences position because of my age and/or my disability and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(ff)  On December 13, 2019, Respondents terminated my employment.

(gg) Respondents terminated my employment because of my age and/or my disability and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(hh) Respondents offered no explanation, including the selection criteria, as to why I was terminated and the less qualified, substantially younger, nondisabled employees who did not seek accommodations for a disability were retained.

(ii)  I was the only employee directly reporting to Macaluso on the Information Technology Procurement team who was terminated on December 13, 2019.

(jj)  I was the oldest employee on the Information Technology Procurement team reporting to Macaluso.

(kk) I was the only disabled employee on the Information Technology Procurement team reporting to Macaluso.

(ll)  I had no performance or disciplinary issues throughout my employment.

(mm)   Respondents assigned my job duties to Gosciminski and other younger and/or nondisabled employees and/or employees who have not sought reasonable accommodations for a disability. I was more qualified and experienced to perform my job duties than the employees to whom Respondents assigned my job duties.

(nn) According to the OWBPA list, Respondents retained all the younger employees in my position, Director 2, Procurement, when I was terminated.

(oo) According to the OWBPA list, I was one (1) of the two (2) oldest Director 2, Procurement employees, age fifty-six (56), and was the only Director 2, Procurement employee terminated.

(pp) Respondents failed to select me for posted positions for which I was qualified and had applied because of my age and/or my disability and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(qq) Respondents terminated my employment because of my age and/or my disability and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(rr) Respondents' age and disability discrimination and retaliation have caused me emotional distress.

B.    1.    Respondents' Stated Reasons

(a) Respondents' stated reason for terminating my employment, that Respondents would be eliminating my position instead of eliminating Gosciminski's position, is pretext for age and/or disability discrimination and/or retaliation for my seeking reasonable accommodations for my disability.

(b) Respondents' stated reasons for failing to select me for the Director, External Manufacturing and Supply Chain position or the Director, External Alliances for Data Sciences position are pretext for age and/or disability discrimination and/or retaliation for my seeking reasonable accommodations for my disability.

C.    1.    Statutes and Bases for Allegations

I believe that Respondents have discriminated against me based on my age (56) and my disability (including history of and regarded as) and retaliated against me based on my seeking reasonable accommodations for my disability, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD") as set forth herein.

# EXHIBIT B

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   Vincent P. Pultorak
███████████
**Schwenksville, PA 19473**

From:   **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2020-02771** | **Legal Unit,** **Legal Technician** | **(267) 589-9707** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*

**Jamie R. Williamson,**
**District Director**

November 9, 2020
*(Date Mailed)*

Enclosures(s)

cc:   **Carmencita Velazquez-Marquez**
**JOHNSON & JOHNSON GLOBAL SERVICES**
**8800 Grand Oak Circle**
**Tampa, FL 33637**

**Emily R. Derstine Friesen, Esq.**
**CONSOLE MATTIACCI LAW, LLC**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**